IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2025 Session

## METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY ET AL. v. BILL LEE ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 23-0336-I, 23-0395-III        Patricia Head Moskal, Chancellor
_____

**No. M2024-01182-COA-R3-CV**
_____

KENNY ARMSTRONG, dissenting in part.

I write separately to address what I consider to be an erroneous reading of Article VII, section 1 of the Tennessee Constitution (the "Article"), which provides, in relevant part:

> The legislative body **shall not exceed twenty-five members** . . . Any county organized under the consolidated government provision of Article XI, Section 9, of this Constitution **shall be exempt** from having a county or legislative body as described in this paragraph.

(Emphases added). It is undisputed that Metro qualifies for the exemption contained in the Article. The obvious reason for exempting a consolidated government from the restriction on the size of its membership is to accommodate the far larger population of a consolidated government as compared to a single county or municipality.

In reaching its conclusion that the General Assembly may limit Metro's legislative body to 20 members, the majority, like the dissent in the trial court, incorrectly interprets the Article's use of "exempt" to mean "does not apply" or "inapplicable" In construing a constitutional provision, "we begin by reading the plain language and giving terms 'their ordinary and inherent meaning.'" ***McNabb v. Harrison***, -- S.W.3d --, No. E2022-01577-SC-R11-CV, 2025 WL 730065, at *3 (Tenn. Mar. 7, 2025) (quoting ***State v. Phillips***, 159 Tenn. 546, 21 S.W.2d 4, 5 (Tenn. 1929)). Therefore, we "construe a constitutional provision as it is written" and "[w]hen a constitutional provision has a clear meaning[,]" we do not apply another meaning or create an ambiguity. ***Id***. (citations omitted). Here, the majority's interpretation of the Article clearly indicates that it erroneously reads "exempt" as "inapplicable." Respectfully, "inapplicable" and "exempt" do not denote the same thing. "Exempt" means "free or released from some liability or requirement to which others are

subject," Merriam-Webster Online Dictionary (2025) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)). "Inapplicable" means "not applicable [or] irrelevant." *Id.* The "liability or requirement" at issue here is the cap on the number of members a legislative body may have. The restriction states that the membership will "not exceed twenty-five members." In other words, the restriction contemplates that the legislative body may have any membership number from 0 to 25 but may not exceed 25. The Article specifically exempts a consolidated government, *i.e.,* Metro, from this restriction. In this respect, the exemption works a benefit to Metro, *i.e.,* Metro is relieved from limiting its legislative body to 25 members or less.

Although the plain language of the Article relieves, *i.e.*, exempts, Metro from the membership limit of 25 or less, the majority concludes that "Nothing in th[e] language [of the Article] [] indicates that other restrictions that derive outside of 'this paragraph' are prohibited. Nor does the plain language of this paragraph in any way circumscribe the power of the General Assembly to legislate the membership of metropolitan councils." Respectfully, the plain language of the Article does limit the General Assembly's power to hold Metro to 25 or fewer members because Metro is **exempt** from that restriction. The majority's reading that there is nothing in the Article to curtail the General Assembly's power to limit Metro to 20 members is a correct reading only with the substitute of "inapplicable" for "exempt." If, as the majority clearly concludes, the Article is "inapplicable" to Metro, then I would agree that the General Assembly has the power to set Metro's membership at any number it might choose (*i.e.*, as the majority states, there would be "nothing in the language of the constitution to prevent the Tennessee General Assembly from imposing its own limit on the voting membership of a metropolitan council."). However, the Article does not state that the restriction is inapplicable to Metro; it states that Metro is exempt from the restriction. Although the majority acknowledges the use of the term "exempt," it does not give effect to the meaning of that word. Exempt means that Metro is "free from [this] requirement" to limit its membership to 25 or less So, while the Article contains no language to enjoin the General Assembly from limiting Metro's legislative body to any number over 25, the Article clearly precludes the General Assembly from limiting Metro's membership to any number less than 25. In affirming the General Assembly's attempt to cap Metro's membership at 20, the majority imposes a restriction, from which Metro is specifically exempted by the plain language of the Article. In doing so, the majority, like the General Assembly, usurps the plain language of the Article and negates the benefit conferred to Metro by the exemption contained therein. This is unconstitutional. Accordingly, I dissent from the majority's holding that subsection 1(a) of the Act does not violate the exemption clause contained in the Article.

_s/ Kenny Armstrong_____<br>
KENNY ARMSTRONG, JUDGE